TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorneys
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2686
     Facsimile: (213) 894-0142
     E-mail: James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:21-CV-02430-DMG (KSx) |
| Plaintiff, | |
| v. | PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES |
| $50,000.00 IN U.S. CURRENCY, | |
| Defendant. | [PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PROPOSED ORDER GRANTING MOTION AND PROPOSED JUDGMENT LODGED UNDER SEPARATE COVER] |
| JAUZLYNN ISQUIERDO, | |
| Claimant. | Date:     January 21, 2022<br>Time:     3:00 p.m.<br>Location: Courtroom 8C<br>Before:   Hon. Dolly M. Gee |

1
2
3
4
5
6
7

Plaintiff United States of America hereby moves this court for summary judgment in favor of the United States on the ground that the defendant currency seized on September 4, 2020, at the Palmdale residence of Jordan McCormick ("J. MCCORMICK"), represents or is traceable to currency furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 *et seq*., and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  Therefore, the government is entitled to judgment as a matter of law.

8
9
10
11
12
13
14

On December 10, 2021, the government timely notified Claimant of this motion, pursuant to L.R. 7-3.  The motion is based on the attached Memorandum of Points and Authorities and the evidence submitted in Support of Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law, the Proposed Order Granting Summary Judgment and Proposed Judgment (each lodged under separate cover); all pleadings and papers on file in this action; and such other and further matters as may be presented at any hearing on this motion, and matters of which the Court may take judicial notice.

15
16
17
18

This Motion is scheduled to be heard on January 21, 2022 at 3:00 p.m. before the Honorable Dolly M. Gee, United States District Judge, United States Courthouse located at 350 West First Street, Courtroom 8C, Los Angeles, California, or on another date and time as the Court may direct.

19
20
21

/ /
/ /
/ /

22
23
24
25
26
27
28

2

1    Dated: December 17, 2021                Respectfully submitted,

2                                            TRACY L. WILKISON
3                                            United States Attorney
                                             SCOTT M. GARRINGER
4                                            Assistant United States Attorney
                                             Chief, Criminal Division
5                                            JONATHAN S. GALATZAN
6                                            Assistant United States Attorney
                                             Chief, Asset Forfeiture Section
7

8                                             /s/ James E. Dochterman
9                                            JAMES E. DOCHTERMAN
                                             Assistant United States Attorney
10

11                                           Attorneys for Plaintiff
12                                           UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Contents

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.   INTRODUCTION          1

II.  RELEVANT PROCEDURAL HISTORY ...........................................................1

III. STATEMENT OF FACTS ...............................................................................2

    A.   The Investigation. ...............................................................................2

    B.   Seizure of the Defendant Currency. ..................................................3

    C.   Key Procedural Events and Discovery. ...............................................3

IV.  ARGUMENT          7

    A.   Standard of Proof. ...............................................................................7

        1.   The Standard for Granting Summary Judgment ...............................7

        2.   The Burden of Proof in a Civil Judicial Forfeiture Case ..................8

        3.   Standing Plays a Special Role in Civil Forfeiture Cases. ................10

    B.   Forfeiture ..........................................................................................14

    C.   Claimant Lacks Standing to Maintain a Claim Because She is Incapable of Proving an Ownership Interest in the Defendant Currency. ........................................................................................15

    D.   The Undisputed Facts Establish by a Preponderance of the Evidence that the Defendant Currency is Forfeitable Pursuant to 21 U.S.C. § 881(a)(6) as Proceeds of Illegal Narcotic Trafficking, or Was Intended to Be Used in One or More Exchanges for a Controlled Substance or Listed Chemical. .......................................................18

        1.   The Packaging and Quantity of the Currency is Typical of the Practices of Narcotics Dealers .......................................................18

        2.   The Aggregate of the Facts Establish the Forfeitability of the Defendant Currency .......................................................................21

        3.   Claimant's Income is Inconsistent with the Amount of Cash Seized ...........................................................................................23

VI.  CONCLUSION          25

i

**Table of Authorities**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 8, 9, 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................... 7, 8, 9

*Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*,
    508 U.S. 602 (1993) ................................................................................ 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................. 12

*Masson v. New Yorker Mag.*,
    501 U.S. 496 (1991) ................................................................................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................ 9

*Mercado v. U.S. Customs Serv.*,
    873 F.2d 641 (2d Cir. 1989) ................................................................. 11

*Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.*,
    248 F.3d 29 (1st Cir. 2001) .................................................................. 17

*Rodowicz v. Mass. Mut. Life Ins. Co.*,
    279 F.3d 36 (1st Cir. 2002) .................................................................. 17

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ................................................................ 10

*Travelers Indem. Co. of Conn. v. Hudson Ins. Co.*,
    442 F. Supp. 3d 1259 (E.D. Cal. 2020) ................................................ 10

*U.S. Funds v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*,
    403 F.3d 448 (7th Cir. 2005) ................................................................ 23

*United States v. 2,051,660.00 in U.S. Currency*,
    No. 07-CV-1338 JTM, 2008 U.S. Dist. LEXIS 124625 (D. Kan. Sept. 29, 2008) ... 14

*United States v. 22 Santa Barbara Drive*,
    264 F.3d 860 (9th Cir. 2001) ................................................................ 18

*United States v. 84,615 in U.S. Currency*,
    379 F.3d 496 (8th Cir. 2004) ........................................................... 19, 21

*United States v. 100,348.00 in U.S. Currency*,
   354 F.3d 1110 (9th Cir. 2004) ............................................................. 11

*United States v. 148,840.00 in U.S. Currency*,
   521 F.3d 1268 (10th Cir. 2008) ........................................................... 18

*United States v. 174,206.00 in U.S. Currency*,
   320 F.3d 658 (6th Cir. 2003) ........................................................... 23-24

*United States v. 228 Acres of Land*,
   916 F.2d 808 (2d Cir. 1990) ............................................................... 24

*United States v. 874 Gartel Drive*,
   79 F.3d 918 (9th Cir. 1996) ............................................................... 20

*United States v. 3814 NW Thurman St.*,
   164 F.3d 1191 (9th Cir. 1999) ........................................................... 20

*United States v. $11,500.00 in U.S. Currency*,
   710 F.3d 1006 (9th Cir. 2013) ................................................ 7, 8, 14-15

*United States v. $22,050.00 in U.S. Currency*,
   No. CV 16-4081-DMG (JPRx), 2017 U.S. Dist. LEXIS 140086 (C.D. Cal. Aug. 29,
   2017) ................................................................................................. 20

*United States v. $36,000.00 in U.S. Currency*,
   No. CV 16-6043 PA (FFMx), 2018 U.S. Dist. LEXIS 22773 (C.D. Cal. Feb. 8, 2018)
   ............................................................................................................ 19

*United States v. $38,000.00 in U.S. Currency*,
   816 F.2d 1538 (11th Cir. 1987) ......................................................... 10

*United States v. $49,790 in U.S. Currency*,
   763 F. Supp. 2d 1160 (N.D. Cal. 2010) ........................................... 9, 21

*United States v. $52,000.00, More or Less, in United States Currency*,
   508 F. Supp. 2d 1036 (S.D. Ala. 2007) ............................................. 19

*United States v. $117,920.00 in U.S. Currency*,
   413 F.3d 826 (8th Cir. 2005) ............................................................. 19

*United States v. $129,727.00 U.S. Currency*,
   129 F.3d 486 (9th Cir. 1997) ............................................................. 19

*United States v. $133,420.00 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012) ............................................... 12, 13, 16

*United States v. $162,576.00 in U.S. Funds*
  No. 4:10-CV-100, 2011 U.S. Dist. LEXIS 125858 (M.D. Ga. Nov. 1, 2011) ............. 12

*United States v. $250,000 in U.S. Currency*,
  808 F.2d 895 (1st Cir. 1987) ......................................................... 22

*United States v. $252,300.00 in U.S. Currency*,
  484 F.3d 1271 (10th Cir. 2007) ...................................................... 21

*United States v. $ 13,963.00, More or Less, in United States Currency*,
  CIVIL ACTION NO. 3:07-0470, 2009 U.S. Dist. LEXIS 95270 (S.D.W. Va. Oct. 13,
  2009) ............................................................................... 23

*United States v. $ 410,000.00 in U.S. Currency*,
  No. 07-0598, 2007 U.S. Dist. LEXIS 94008 (D.N.J. Dec. 21, 2007) ....................... 13

*United States v. $ 500,000.00 in U.S. Currency*,
  591 F.3d 402 (5th Cir. 2009) ......................................................... 12

*United States v. All Funds in Account Nos. 747.034/278*,
  295 F.3d 23 (D.C. Cir. 2002) ......................................................... 10

*United States v. All Funds in the Account of Prop. Futures, Inc.*,
  820 F. Supp. 2d 1305 (S.D. Fla. 2011) ................................................ 12

*United States v. Approximately $3,104,661.00 in U.S. Currency*,
  CASE NO. 1:14-cv-01642-LJO-SKO, 2015 U.S. Dist. LEXIS 36122 (E.D. Cal. Mar.
  23, 2015) ........................................................................... 15

*United States v. Cruz*,
  669 F. App'x 883 (9th Cir. 2016) ..................................................... 21

*United States v. Currency*,
  283 F.3d 977 (9th Cir. 2002) ................................................... *passim*

*United States v. Daccarett*,
  6 F.3d 37 (2d Cir. 1993) ............................................................. 15

*United States v. Eighty Thousand Six Hundred Thirty-Three Dollars*,
  CASE NO. 2:05-cv-1086-WKW, 2008 U.S. Dist. LEXIS 32745 (M.D. Ala. Apr. 21,
  2008) ............................................................................... 23

*United States v. Five Hundred Forty-Three Thousand One Hundred Ninety Dollars in
U.S. Currency*,
  535 F. Supp. 2d 1238 (M.D. Ala. 2008) ................................................ 12

*United States v. Funds from Prudential Sec.*,

iv

1       362 F. Supp. 2d 75 (D.D.C. 2005) ................................................... 24

2   *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars,*
3       403 F.3d 448 (7th Cir. 2005) ...................................................... 15

4   *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars,*
5       403 F.3d 448 (7th Cir. 2005) ............................................. 9, 15, 23

6   *United States v. Herder,*
        594 F.3d 352 (4th Cir. 2010) ..................................................... 18
7
    *United States v. One 1973 Rolls Royce,*
8       43 F.3d 794 (3d Cir. 1994) ....................................................... 19

9   *United States v. One 1989 Jeep Wagoneer,*
10      976 F.2d 1172 (8th Cir. 1992) ................................................ 19-20

11  *United States v. One Hundred Thirty-Eight Thousand,*
        240 F. Supp. 2d 220 (E.D.N.Y. 2003) ....................................... 11
12
13  *United States v. One Parcel of Real Estate Located at 1948 Martin Luther King Drive,*
        91 F. Supp. 2d 1228 (C.D. Ill. 2000) ....................................... 20
14
15  *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233 ,*
16      326 F.3d 36 (1st Cir. 2003) ...................................................... 10

17  *United States v. Real Prop. In Mecklenburg Cnty.,*
18      814 F. Supp. 468 (W.D.N.C. 1993) ......................................... 24

19  *United States v. Real Prop. Located at 22 Santa Barbara Drive,*
20      264 F.3d 860 (9th Cir. 2001) ...................................................... 8

21  *United States v. Real Prop. Located at 5201 Woodlake Dr.,*
        895 F. Supp. 791 (M.D.N.C. 1995) ......................................... 11
22
23  *United States v. Real Prop. Located at Section 18,*
        976 F.2d 515 (9th Cir. 1992) .................................................... 11
24
    *United States v. Thirty Thousand & Twenty-Nine Dollars in U.S. Currency ,*
25      CASE NO. 05-14242-CIV-MARRA/LYNCH, 2008 U.S. Dist. LEXIS 42598 (S.D. Fla. May 29, 2008) ...................................................... 16

26  *Via Mat Int'l S. Am. Ltd. v. United States,*
27      446 F.3d 1258 (11th Cir. 2006) .............................................. 11

28

**Federal Statutes**

18 U.S.C. § 924(c)(1)(A)(i) ................................................................... 22

18 U.S.C. § 981(a)(1)(C) ............................................................... 17, 23

18 U.S.C. § 983(c)(1) ..................................................................... 8, 18

18 U.S.C. § 983(c)(2) ..................................................................... 8, 18

18 U.S.C. § 1956(c)(7) ......................................................................... 17

18 U.S.C. § 1956(c)(7)(A) ................................................................... 17

21 U.S.C. § 841 ........................................................................... *passim*

21 U.S.C. § 841(a)(1) ........................................................................ 2-3

21 U.S.C. § 841(a)(1), (b)(1)(A)(v) .................................................. 22

21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) .................................................. 22

21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) ...................................... 22

21 U.S.C. § 846 ................................................................................... 22

21 U.S.C. § 881(a)(6) .................................................................. *passim*

21 U.S.C. §§ 853, 18 .......................................................................... 22

**Rules**

Local Rule 7-3 ................................................................................ 1, 4

Fed. R. Civ. P. 37(c)(1) ...................................................................... 17

Fed. R. Civ. P. 56 ............................................................................. 1, 9

Fed. R. Civ. P. 56(a) ........................................................................ 7, 25

Fed. R. Civ. P. 56(c) .............................................................................. 9

Fed. R. Civ. P. 56(c)(1)(B) .................................................................... 8

Fed. R. Civ. P. 56(f) ............................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff United States of America ("plaintiff" or "the government") respectfully submits this memorandum of points and authorities in support of its motion pursuant to Fed. R. Civ. P. 56 for summary judgment against the interests of claimant Jauzlynn Isquierdo ("Claimant").  The government is entitled to a judgment of forfeiture as a matter of law because the undisputed facts demonstrate that the defendant currency, seized on September 4, 2020, at the residence of suspected drug dealer Jordan McCormick, represents or is traceable to one or more exchanges for a controlled substance or listed chemical, or was intended to be used in one or more such exchanges, in violation of 21 U.S.C. § 841 *et seq.,* and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## II.    RELEVANT PROCEDURAL HISTORY

On March 19, 2021, the government filed this *in rem* civil forfeiture action against the defendant currency.[1]  ECF No. 1.  The complaint alleges that the defendant currency represents or is traceable to one or more exchanges for a controlled substance or listed chemical, or was intended to be used in one or more such exchanges, in violation of 21 U.S.C. § 841 *et seq.*, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  ECF No. 1.

On April 27, 2021, Jauzlynn Isquierdo ("Claimant") through her counsel Mr. Elon Berk, filed a judicial claim.  On May 28, 2021, Claimant filed her answer to the complaint.  ECF Nos. 13, 17.  Pursuant to Local Rule 7-3, on December 10, 2021, the

---

[1] Civil forfeiture actions are in rem proceedings against property. Claimants may contest forfeiture by filing a claim in accordance with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), which govern in rem forfeiture actions. *See* Supplemental Rules A(1)(B), G(1) and G(5)(a)(i). The Federal Rules of Civil Procedure also apply to in rem civil forfeiture actions, except to the extent they are inconsistent with the Supplemental Rules.  *See* Supplemental Rule A(2).

government notified Claimant of its intent to file the instant motion.  No other parties filed claims or answers in this matter.

## III.    STATEMENT OF FACTS

### A.    The Investigation.

On September 4, 2020, as part of an ongoing investigation by the High Intensity Drug Trafficking Area ("HIDTA") Fusion Task Force, Drug Enforcement Administration ("DEA"), Naval Criminal Investigative Service ("NCIS"), the Federal Bureau of Investigation ("FBI") and Ventura County Sheriff's Office ("VCSO"), officers executed a federal search warrant on a residence in Palmdale, California, and a vehicle at that location.  *See* Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law ("SOF") ¶ 1.  The investigation revealed that prior to September 4, 2020, Jordan McCormick ("J. MCCORMICK") used the Snapchat messaging application[2] and other messaging applications to facilitate the illegal sale and distribution of controlled substances, including fentanyl-laced counterfeit Oxycodone pills, LSD, MDMA, and cocaine on an ongoing basis to Gustavo Jaciel Solis ("SOLIS") for further distribution to customers who included members of the United States Military.  SOF ¶ 2.  On May 23, 2020, a United States Service Member (USSM2) ingested pills supplied by SOLIS, and died that same day in Los Angeles County.  SOF ¶ 4.  Between May 29, 2020, and July 21, 2020, NCIS and HIDTA investigators arranged for controlled purchases of narcotics from SOLIS on three separate occasions.  During these controlled buys (all of which were negotiated in Snapchat messages), SOLIS and his business partner Jessica Perez ("PEREZ"), sold a total of approximately 450 purported Oxycodone pills to a HIDTA investigator.  SOF ¶ 5.

The DEA Southwest Laboratory determined that approximately four hundred and fifty of those pills contained fentanyl.  SOF ¶ 6.  The government obtained federal search and arrest warrants for SOLIS's residence and person for violations of 21 U.S.C. §

---

[2] Snapchat is a messaging application developed by Snap, Inc.  SOF ¶ 3.

2

841(a)(1) (Distribution of Controlled Substances).  SOF ¶ 7.  On July 29, 2020, NCIS and HIDTA investigators executed the warrants at SOLIS's residence in Sylmar, California.  HIDTA investigators subsequently seized evidence from SOLIS which, upon review, led them to identify J. MCCORMICK as SOLIS' drug supplier.  SOF ¶ 8.

### B.    Seizure of the Defendant Currency.

On September 4, 2020, NCIS and HIDTA investigators executed federal search and arrest warrants at J. MCCORMICK's Palmdale residence, and recovered two firearms (a Glock Model 17, and a semi-automatic assault rifle) and narcotics, including but not limited to approximately 11.85 grams of LSD, various quantities of marijuana, methamphetamine, and a variety of benzodiazepines (Flualprazolam, Clonazolam, Etizolam, and Alprazolam).  SOF ¶ 9.  The criminal case against J. MCCORMICK is pending in this Court.  *U.S. v. Jordan Nicholas McCormick, et al.*, 2:20-CR-00346-DMG.  The search also resulted in the seizure of $50,000.00 in U.S. currency (*i.e.* the defendant currency), found in a hallway closet.  SOF ¶ 10.  The defendant currency consisted entirely of one-hundred-dollar bills, bundled together with rubber bands in a manner common among narcotics traffickers.  SOF ¶ 11.

### C.    Key Procedural Events and Discovery.

On April 27, 2021, Jauzlynn Isquierdo ("Claimant") through her counsel Mr. Elon Berk, filed a judicial claim.  On May 28, 2021, Claimant filed her answer.  SOF ¶ 13. On August 17, 2021, this Court entered a scheduling and case management order setting the non-expert discovery cut-off for October 8, 2021.  SOF ¶ 14.  On August 11, 2021, the government served Plaintiff's First Set of Rule G Special Interrogatories via email (pursuant to prior consent to email service) on Mr. Berk, with a return date 21 days later, *i.e.* September 7, 2021.  SOF ¶ 15.

On September 14, 2021, government counsel served Requests for Admissions and Request for Documents on Mr. Elon Berk, via email, and the following day by First Class U.S. Postal mail.  Both discovery requests had return dates of October 14, 2021.

3

SOF ¶ 16.  On September 17th, September 29th, October 5th, October 7th, and October 20th, government counsel further emailed Mr. Berk regarding Claimant's anticipated, and then lack of, discovery responses.  SOF ¶ 17.  October 22, 2021, Mr. Berk sent Claimant's responses to the August 11, 2021, Special Interrogatories to the government.  SOF ¶ 18.  In that same October 22, 2021, email, Mr. Berk told government counsel that he needed until October 29, 2021, to respond to the Requests for Admissions and Request for Documents that were due on October 14, 2021.  SOF ¶ 19.  Soon thereafter, the parties spoke by telephone and agreed to a joint stipulation and request to extend the scheduling order dates, specifically, to extend the discovery deadline from October 19, 2021, to December 7, 2021, and to extend other pretrial and trial dates accordingly pursuant to an amended scheduled.  SOF ¶ 19.

On October 27, 2021, this Court entered an order approving the request to extend the discovery deadline from October 19, 2021, *nunc pro tunc*, to December 7, 2021, as well as the other dates the parties had requested.  SOF ¶ 20.  The government counsel waited until December 10, 2021, to ascertain whether he had received any response to the Requests for Admissions and Request for Documents served on September 14, 2021.  SOF ¶ 21.  The government did not receive a response by email, which is how the parties have communicated and consented to service, nor did the government receive a response by the U.S. postal service or other delivery method.  SOF ¶ 21.

On December 10, 2021 government counsel emailed Mr. Berk and notified him pursuant to Local Rule 7-3 that no discovery had been received, and that the government intended to file a Motion for Summary Judgment.  SOF ¶ 21.  Mr. Berk responded and asserted that discovery had been sent to the government on December 6, 2021, via First Class U.S. Postal Mail, but without a tracking number.   SOF ¶ 21.  On December 14, 2021, Mr. Berk provided Claimant's responses via upload to the cloud service, USAfx.  SOF ¶ 21.  The discovery period is now closed.  SOF ¶ 22.  However, government counsel did not receive any Claimant discovery responses, by either email, U.S. postal, or any other delivery service, by the Court's December 7, 2021 discovery deadline.  SOF

¶ 23.

At the time of seizure, Jauzlynn Jessica Isquierdo lived at the Palmdale, California residence.  SOF ¶ 24.  Claimant claims to have earned the defendant currency in the course of past employment and stored funds as savings.  SOF ¶ 25.  Claimant claims that no portion of the defendant currency was given to her by any of the cohabitants of the Palmdale residence.  SOF ¶ 26.  Claimant claims to have had no knowledge that the cohabitant J. MCCORMICK, manufactured, produced, stored, or sold narcotics and/or controlled substances at the residence in Palmdale, California.  SOF ¶ 27.

Claimant denies that she did not acquire the defendant currency by any legal means. SOF ¶ 28.  Among other matters, Claimant also denied that J. MCCORMICK possessed unprescribed medicines (including Promethlazine and Oxycodone), manufactured pills, powder, or other chemical products containing controlled substances, or that he sold controlled substances, at the Palmdale residence.  SOF ¶ 29

For the 2018, 2019, and 2020 federal calendar tax years (January 1, 2018 to December 31, 2020), Claimant reported taxable income of less than $65,000.00 to the Internal Revenue Service for each year.  SOF ¶ 30. Claimant provided three bank statements for a JP Morgan Chase Bank, N.A., account ending in x7098 for a three-month period between December 24, 2020, to March 23, 2021.  SOF ¶ 31.  These statements show a total of ATM, debit, or electronic withdrawals of $6,446.31 ($2,352.43 ATM/debit and $4,093.88 electronic as described by the bank). SOF ¶ 31.

Claimant further provided six, one-page summaries from possible bank statements showing a spending summary for the months May 2021 to October 2021.  During this six-month period, Claimant spent $20,794.58, for a monthly average of $3,465.76. SOF ¶ 32.  Claimant provided one IRS Form 1040 federal tax return for the 2020 tax year, stating total reported gross income of only $10,428.  SOF ¶ 33.  Claimant did not provide responsive documents to the government's request for tax documentation for 2018 or 2019.  SOF ¶ 33.  Where the government asked Claimant to admit that for the 2018, 2019, and 2020 federal tax years, she earned income which she did not report to

the Internal Revenue Service, Claimant responded to each individual request for admission with, "Unable to admit or deny as Respondent asserts her right against self-incrimination and to remain silent pursuant to the 5th Amendment to the United States Constitution." SOF ¶ 34.

DEA agents found the defendant $50,000.00 in U.S. currency on September 4, 2020, inside a container in a hall closet of J. MCCORMICK's Palmdale residence. SOF ¶ 35. Photographs taken during the search show the following: (Photo Page 1) the outside view of the closet where the combination box holding the U.S. currency was found; (Photo Page 2) the two secure boxes found; and (Photo Page 3) the defendant currency found inside one of the secure boxes. SOF ¶ 35. Photographs taken by agents during the search of the Claimant's Palmdale residence show the presence of bulk quantities of controlled substances prepared for manufacture or distribution in plain view, throughout various locations in the home. SOF ¶ 36.

In the course of its investigation, DEA agents obtained bank statements pertaining to J. MCCORMICK's Chase bank account ending in x8787. SOF ¶ 37. In the three-month period preceding the September 4, 2021, J. MCCORMICK withdrew a total of $58,300.00 from the x8787 account. SOF ¶ 38. The withdrawals were made on the following dates and amounts:

- Withdrawals--May 22, 2020-June 19, 2020 Statement:
  June 4 ($8,300.00); June 17 ($8,500.00). SOF ¶ 39.

- Withdrawals--June 20, 2020-July 21, 2020 Statement:
  June 23 ($3,000.00); June 27 ($8,500.00); July 7 ($8,000.00); July 9 ($3,000.00); July 14 ($3,000.00). SOF ¶ 40.

- Withdrawals--July 22, 2020-August 21, 2020 Statement:
  July 24 ($1,000.00); July 25 ($3,000.00); July 27 ($3,000.00); August 8 ($3,000.00); August 11 ($3,000.00); August 14 ($3,000.00). SOF ¶ 41.

Based on the above, plaintiff alleges that the defendant currency represents or is traceable to one or more exchanges for a controlled substance or listed chemical, or was

6

intended to be used in one or more such exchanges, in violation of 21 U.S.C. § 841 *et seq.*, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  SOF ¶ 12.

## IV.   ARGUMENT

The undisputed facts establish that the defendant currency is subject to forfeiture and that as a matter of law Claimant is incapable of establishing a defense to forfeiture. Claimant can neither rebut the government's evidence that the property is subject to forfeiture, nor establish that she is an owner of any interest in the defendant currency. The Court should grant summary judgment to the United States pursuant to Federal Rule of Civil Procedure 56(a).

### A.   Standard of Proof

#### 1.   The Standard for Granting Summary Judgment

Summary judgment is appropriate when the district court, viewing the facts in the light most favorable to the nonmoving party, finds that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, the fact must "affect the outcome" of the lawsuit to be deemed "material."  *Id.* at 248.

Initially, the moving party has the burden to establish for the court the basis for the summary judgment motion, and identify those portions of the record of evidence which the movant believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The government may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general. *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013-14 (9th Cir. 2013) citing*United States v. Currency*, 283 F.3d 977, 984 (9th Cir. 2002)(affirming government's motion for summary judgment in light of substantial circumstantial evidence that currency was connected to drug trafficking, and where claimant refused to disclose the source of the currency or provide any other evidence that the source was legitimate).  To carry its burden of production on summary judgment, a moving party "must either produce

evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); Fed.R.Civ.P. 56(c)(1)(B) (a party can show a fact is not in dispute by demonstrating that "an adverse party cannot produce admissible evidence to support the fact").

Once the movant establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show that there is an actual issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party cannot rely on the pleadings alone, but must show by affidavits, depositions, answers to interrogatories, or admissions that there are specific facts demonstrating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

2.    The Burden of Proof in a Civil Judicial Forfeiture Case

The government is entitled to summary judgment in a civil forfeiture action when the undisputed facts establish by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1).  The government may rely upon any evidence obtained after filing the Verified Complaint to establish the preponderance standard. *Id.* § 983(c)(2).  The government satisfies the "preponderance of the evidence" burden by establishing that the "relevant facts are more likely true than not." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (the preponderance standard requires proof that a fact is more probable than not). The government may discharge its burden of proof with sufficiently strong circumstantial evidence, and is not required to trace assets directly to particular criminal violations.  *See United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013); *see also United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 872 (9th Cir. 2001) (circumstantial evidence may be used to show property subject to forfeiture).  The Court should consider the "totality of the evidence as a whole and in the appropriate context" when determining whether the government has met its

burden.  *United States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 469 (7th Cir. 2005).  Thus, the determination whether the government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence.  *United States v. $49,790 in United States Currency*, 763 F. Supp. 2d 1160, 1168 (N.D. Cal. 2010); *see also United States v Currency, US $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002).  A motion for summary judgment may be supported by answers to interrogatories and deposition testimony.  Fed.R.Civ.P. 56(c).

The moving party is not required to negate the elements of the non-moving party's case on which the non-moving party bears the burden of proof.  *Celotex*, 477 U.S. at 323. On the contrary, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id*.

Nor can the non-moving party defeat the moving party's proper motion for summary judgment simply by alleging a factual dispute between the parties.  To preclude summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  If the opposing party shows that it cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may either deny or continue the motion to allow additional discovery.  Fed.R.Civ.P. 56(f).

While the court is required to draw all reasonable inferences in favor of the non-moving party (*Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 520 (1991); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986)), the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 588.  It is the court's responsibility "to determine whether the 'specific facts' set forth by the non-moving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury

9

might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Travelers Indem. Co. of Conn. v. Hudson Ins. Co.*, 442 F. Supp. 3d 1259, 1267 (E.D. Cal. 2020).

### 3.   Standing Plays a Special Role in Civil Forfeiture Cases.

In an *in rem* civil forfeiture case, the government is the plaintiff, the property is the defendant, and the claimant[3] is an intervenor seeking to challenge the forfeiture action. *See United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003) ("Because civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene"); *United States v. All Funds in Account Nos. 747.034/278*, 295 F.3d 23, 25 (D.C. Cir. 2002) ("Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest"). As intervenors, claimants must establish they have sufficient interest in the property to invoke the court's jurisdiction. *See United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 n. 12 (11th Cir. 1987) (because a civil forfeiture action is brought against the property in rem, and not against the claimant personally, the government has no burden of proof until the claimant demonstrates that he has "a legally cognizable interest in the property that will be injured if the property is forfeited to the government" sufficient to satisfy the case or controversy requirement). If the claimant does not have a real interest in the property, there is no "case or controversy" and, consequently, no basis for a court to

---

[3] A claimant is a person or entity that files a claim in an in rem civil forfeiture action. Supplemental Rule G(5)(a)(i) provides that a person or entity that wishes to contest the forfeiture of the defendant property in a civil forfeiture action must file a verified claim identifying the claimant and claimant's interest in the defendant property.

exercise jurisdiction under Article III of the Constitution. *See United States v. Real Property Located at 5201 Woodlake Dr.*, 895 F. Supp. 791, 793 (M.D.N.C. 1995) ("in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts") (citations and internal quotation marks omitted). For that reason, a claimant's Article III standing is a threshold issue in every in rem civil forfeiture case. *See Via Mat International South America, Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006) ("standing is the 'threshold question in every federal case, determining the power of the court to entertain the suit'") (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *United States v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1992) (standing is a "threshold issue . . . [and] claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property") (citations omitted).

As many courts have recognized, the *in rem* nature of civil forfeiture actions creates a substantial danger that claims will be filed by persons with no real interest in the property. *See, e.g., United States v. $100,348.00*, 354 F.3d 1110, 1118-19 (9th Cir. 2004) ("the danger of false claims in [civil forfeiture] proceedings is substantial") (citation and internal quotation marks omitted); *Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir. 1989) (there is a "substantial danger of false claims in forfeiture proceedings"); *United States v. $138,381.00 in U.S. Currency*, 240 F. Supp. 2d 220, 228 (E.D.N.Y. 2003) (same). Entirely frivolous claims may be filed by people who have no connection with the forfeiture case, while other claims may be filed by straw men, nominees, couriers or other third parties seeking to contest the forfeiture in their own names while concealing the identity of some person or entity who cannot or will not file a claim on his or its own behalf. In such cases, pretrial challenges to a claimant's standing are critical: they present the only opportunity for courts to weed out claims filed by improper claimants before the government must respond to motions filed and other litigation actions taken by the claimant. Accordingly, a great deal of forfeiture litigation

1  involves challenges filed by the government to the claimant's standing to contest

2  forfeiture.

3          Supplemental Rule G(8)(c)(ii)(B) sets forth three ways in which the government

4  may challenge a claimant's Article III standing prior to trial: a motion for judgment on

5  the pleadings, a motion for summary judgment and a pretrial evidentiary hearing. *United*

6  *States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012). If the

7  government requests an evidentiary hearing, a claimant must establish his or her standing

8  by a preponderance of the evidence. *$133,420.00 in U.S. Currency*, 672 F.3d at 644

9  ("[a]lthough the burden of proving that the property is subject to forfeiture is on the

10  Government, the burden of establishing standing is on the claimant") (citing

11  Supplemental Rule G(8)(c)(ii)(B)). *Accord United States v. $500,000.00 in U.S.*

12  *Currency*, 591 F.3d 402, 404 n. 2 (5th Cir. 2009) ("the claimant opposing forfeiture

13  bears the burden of establishing standing") (citation omitted); *United States v. All Funds*

14  *in the Account of Property Futures, Inc*., 820 F. Supp. 2d 1305, 1329-32 (S.D. Fla. 2011)

15  (claimant, who had the burden of establishing standing by a preponderance of the

16  evidence, failed to show that he had authority to file a claim on behalf of the LLC of

17  which he was a member); *United States v. $162,576.00 in U.S. Funds*, No. 4:10-CV-100,

18  2011 U.S. Dist. LEXIS 125858 (M.D. Ga. Nov. 1, 2011) ("[t]he claimant must carry the

19  burden of establishing standing by a preponderance of the evidence") (citing

20  Supplemental Rule G(8)(c)(ii)(B) and internal quotation marks omitted)*United States v.*

21  *$162,576 in*; *United States v. $543,190.00 in U.S. Currency*, 535 F. Supp. 2d 1238, 1247

22  (M.D. Ala. 2008) (court schedules evidentiary hearing at which claimant must establish

23  standing based on admissible evidence). *See generally Lujan v. Defenders of Wildlife*,

24  504 U.S. 555, 561 (1992) (the standing requirements are "indispensable" parts of the

25  case that "must be supported in the same way as any other matter on which the plaintiff

26  bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

27  successive stages of the litigation") (citation omitted). Where, as here, the government

28  files a motion for summary judgment, a claimant must, because a claimant has the

12

burden of proof on the standing issue, come forward with sufficient evidence to establish standing in order to have the right to oppose the summary judgment by showing that there are triable issues of material fact as to Article III standing. *$133,420.00 in U.S. Currency*, 672 F.3d at 638.

The purpose of Supplemental Rule G(6), which authorizes the government to serve special interrogatories regarding a claimant's identity and relationship to the defendant property and requires responses thereto within 21 days after service, is to provide the government at the outset of a civil forfeiture case with the means, by way of serving special interrogatories, of determining whether a claimant has standing to contest the forfeiture of the defendant property. *See* Advisory Committee Notes to Supplemental Rule G(8)(c) (noting the "special role that subdivision (6) [*i.e.*, the special interrogatories permitted by Supplemental Rule G(6)] plays in the scheme for determining claim standing"); *$133,420.00 in U.S. Currency*, 672 F.3d at 642 ("[t]he purpose of the rule is to permit the government… to gather information that bears on the claimant's standing;" *e.g.*, special interrogatories may be used to "test the veracity of [claimant's] claim of ownership") (internal quotation marks omitted); *United States v. $410,000.00 in U.S. Currency*, 2007 U.S. Dist. LEXIS 94008, *7 & n. 5 (D.N.J. Dec. 21, 2007) (granting government's motion to compel responses to special interrogatories; such interrogatories are necessary to insure claimant has standing and to protect against nominee claimants). In holding that the government may draft the special interrogatories broadly to inquire into any matter necessary to "test the veracity of [the claimant's] claim of ownership," the Ninth Circuit in *$133,420.00 in U.S. Currency* also held that the government may use special interrogatories to inquire into the claimant's identity, the nature of claimant's interest in the property and the circumstances of claimant acquiring that interest, including the time, place, manner and reason for acquiring the property and the identity of the person from whom the claimant acquired it. *See $133,420.00 in U.S. Currency*, 672 F.3d at 642 (special interrogatories are not limited to asking claimant's identity and nature of claimant's interest in the property; if they were, they would ask for

13

nothing more than what Supplemental Rule G(5) requires to be included in the claim); *United States v. $2,051,660.00 in U.S. Currency*, 2008 U.S. Dist. LEXIS 124625, *1 (D. Kan. Sept. 29, 2008) ("since Supplemental Rule G(5) already requires a claimant to give his name, address and to state ownership interest in the seized property, the addition of Supplemental Rule G(6) phrase regarding 'claimant's identity and relationship to the defendant property' must allow more than a mere recitation of the information already required by Supplemental Rule G(5)").

### B.   Forfeiture

Title 21, United States Code, Section 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter" are subject to forfeiture to the United States.  The elements required by 21 U.S.C. § 881(a)(6) are: (1) that moneys, negotiable instruments, securities, or other things of value; (2) were furnished or intended to be furnished by any person; (3) in exchange for a controlled substance in violation of the law.  *See United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 979-80 (9th Cir. 2002) (quoting *United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir. 1994), superseded on other grounds as stated in *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002)).  "The determination whether the government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence."  *United States v. $49,790 in U.S. Currency*, 763 F. Supp. 2d 1160, 1167 (N.D. Cal. 2010 (citing *Currency, U.S. $42,500.00, supra*, 283 F.3d at 980).

The government is not required to tie the defendant assets to specific drug transactions, but rather "may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general."  *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013-14 (9th Cir. 2013) (citing *Currency,*

*U.S. $42,500.00*, *supra*, 283 F.3d at 984); *U.S. v. Approximately $3,104,661.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 36122 * 4 (E.D. Cal. Mar. 23, 2015); *United States v. $30,670.00*, 403 F.3d 448, 469 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture). Courts have consistently recognized that the clandestine nature of drug transactions typically makes direct evidence of drug sales (*e.g.*, records reflecting dates and parties to the drug transactions and the consideration paid for the drugs) unavailable. Accordingly, proof linking assets to drug trafficking "is likely to be circumstantial, revealing unexplained wealth in conjunction with evidence of drug trafficking." *United States v. Daccarett*, 6 F.3d 37, 56 (2d Cir. 1993) (internal quotation marks and citation omitted). Finally, because it is an *in rem* action against the defendant asset, civil forfeiture does not require indictment or conviction of a person for the underlying offense from which the forfeiture claim arises. *U.S. v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 469 (7th Cir. 2005). Indeed, the government is not even required to prove who committed the underlying offense, only that the defendant property was traceable to or involved in the offense, as required by the statute under which the forfeiture is sought.

## C. Claimant Lacks Standing to Maintain a Claim Because She is Incapable of Proving an Ownership Interest in the Defendant Currency.

As set forth above, the government served special interrogatories on Claimant in order to establish Claimant's basis for her alleged standing, pursuant to her verified claim in which she declared under oath that she "claims an ownership and possessory interest in, and the right to exercise dominion and control over, all of the Defendant property, to wit $50,000.00 in United States currency." SOF ¶ 13. Among other things, the government asked Claimant to "[i]dentify and describe with particularity the source and origin of the Defendant Asset," and asked that the Claimant "identify all documents which relate to the . . . acquisition." SOF ¶25. Claimant objected to these questions and

15

answered that "[n]otwithstanding the objection, Claimant earned the subject funds in the course of past employment and stored funds as savings." SOF ¶ 25. Claimant's vague and unresponsive retort is made even less credible by her failure to provide responsive documents to the government's Request for Production of Documents regarding her reported taxable earning for 2018 and 2019. SOF ¶ 33. Compounding her inability to demonstrate a legitimate source of income, or any income whatsoever sufficient to produce $50,000 in cash savings, Claimant refused to answer Request for Admissions regarding her failure to report income to the IRS in 2018, 2019, or 2020. SOF ¶ 34.

Here, Claimant's refusal to provide tax records or even to answer discovery related to her income is itself sufficient to deny her claim and forfeit the defendant property to the government, and the Court should draw a negative inference accordingly. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012) (granting motion for summary judgment where claimant asserted Fifth Amendment to all questions regarding the circumstances of possession of the property; that left claimant in unexplained, naked possession, which is insufficient to withstand a motion for summary judgment); *See generally United States v. Thirty Thousand & Twenty-Nine ($30,029.00) Dollars in U.S. Currency, No. 05-14242-CIV, 2008 U.S. Dist. LEXIS 42598*, *3 (S.D. Fla. 2008) (granting motion to strike claim for failure to obey order compelling claimant to fill out form authorizing IRS to release claimant's tax returns to the U.S. Attorney in response to the Government's request for production of documents).

Claimant can only demonstrate $10,428 in income and only for tax year 2020. SOF ¶ 33. By no reasonable calculus can Claimant prove, or plausibly assert, that the $50,000 found in the Palmdale residence's hallway closet, shared with her indicted drug trafficker cohabitant, represents her lawfully earned savings to which she is an owner.

Indeed, Claimant should be barred from offering any additional evidence in opposition to this motion, because she failed to respond timely to the special interrogatories, and when she did, the responses were vague and did not provide the specific information sought. Discovery rules may bar parties from offering evidence

they failed to produce in discovery.  *See generally, Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R*., 248 F.3d 29, 34 (1st Cir. 2001) ("For failure to make the specified discovery, the district court is directed to preclude as evidence 'any witness or information not so disclosed' ") (quoting former Fed. R. Civ. P. 37(c)); *Rodowicz v. Mass. Mut. Life Ins. Co*., 279 F.3d 36, 45 n. 10 (1st Cir. 2002) ("Rule 37(c)(1) imposes sanctions for failure to comply" with the requirement under Fed. R. Civ. P. 26(e) to supplement discovery responses).  Claimant made broad claims of having earned the monies but subsequently provided grossly insufficient documentation and none of the detailed information necessary to prove when and how she supposedly earned the defendant currency, or came to "own" it.  SOF ¶ 17, 33, 34.  Accordingly, summary judgment should be granted because Claimant cannot establish that she has standing to assert a claim.

## V.  The Defendant Funds are Subject to Forfeiture as Narcotics Proceeds.

The defendant funds are subject to forfeiture as proceeds of drug trafficking pursuant to 21 U.S.C. § 881(a)(6)[4] and 21 U.S.C. § 841, *et seq*., specifically, that the defendant funds represent or are traceable to funds furnished or intended to be furnished in exchange for a controlled substance or listed chemical.  SOF ¶ 12.  Under the proceeds theory of forfeiture (*i.e.*, the complaint's claim for relief which alleges that the defendant currency is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C)[5] because it

---

[4] 21 U.S.C. § 881(a)(6) provides:

> Subject property.  The following shall be subject to forfeiture to the United States and no property right shall exist in them: (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

[5] 18 U.S.C. § 981(a)(1)(C) provides:

*(footnote cont'd on next page)*

17

represents or is traceable to one or more exchanges for a controlled substance), "the burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).

Under this proceeds theory, "[t]he Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2).  The government may discharge its burden of proving that assets are subject to forfeiture with circumstantial rather than direct evidence.  *See, e.g.,* U*nited States v. Herder,* 594 F.3d 352, 364 (4th Cir. 2010) ("[t]he government may rely on circumstantial evidence to establish forfeitability") (citation omitted); *United States v. 22 Santa Barbara Drive*, 264 F.3d 860, 872 (9th Cir. 2001) (circumstantial evidence may be used to show forfeitability).

**D.** **The Undisputed Facts Establish by a Preponderance of the Evidence that the Defendant Currency is Forfeitable Pursuant to 21 U.S.C. § 881(a)(6) as Proceeds of Illegal Narcotic Trafficking, or Was Intended to Be Used in One or More Exchanges for a Controlled Substance or Listed Chemical.**

1. <u>The Packaging and Quantity of the Currency is Typical of the Practices of Narcotics Dealers</u>

Pursuant to 21 U.S.C. § 881(a)(6), all money and other things of value are subject to forfeiture when they are: "(1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to a controlled substance exchange, or (3) used or intended to be used to facilitate a violation of the Controlled Substances Act." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1270 (10th Cir. 2008).

[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is subject to forfeiture.  18 U.S.C. §§ 1956(c)(7)(A) and 1961(1) define "specified unlawful activity" to include dealing in controlled substances or listed chemicals in violation of 21 U.S.C. § 841 *et seq*.

18

The Ninth and other Circuits have ruled that possession of a large amount of cash, standing alone, is indicative of drug trafficking.  *See United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829 (8th Cir. 2005) ("Soosan was found with a large amount of cash, $117,920.00, and we have found the possession of lesser amounts of currency to be strong evidence connecting the money to illegal drug activities") (internal quotation marks and citations omitted); *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004) ("we have recognized that possession of a large amount of cash (here, nearly $85,000) is strong evidence that the cash is connected with drug activity") (citation omitted); *United States v. $129,727 U.S. Currency*, 129 F.3d 486, 491 (9th Cir. 1997) (claimant's possession of $115,000.00, standing alone, constituted evidence of drug nexus); *United States v. $52,000.00, More Or Less, In U.S. Currency*, 508 F. Supp. 2d 1036, 1041 (S.D. Ala. 2007) ("$52,000.00 in cash is an unusually high sum of cash to carry on one's person.  For the purposes of forfeiture actions, the possession of a large sum of currency amounts to strong evidence of illegal activity").

The bundling of the defendant currency using rubber bands and money bands also support a connection to drug trafficking.  "Courts have recognized that the manner in which the currency is bundled and wrapped weighs in favor of the court finding that the currency is substantially connected to an illegal drug transaction." *United States v. $36,000.00 in United States Currency*, 2018 U.S. Dist. LEXIS 22773 *15-16 (C.D. Cal. Feb 8, 2018)*, citing *United States v. Approximately $28,210.00 in United States Currency*, 2014 U.S. Dist. LEXIS 177351 (E.D. Cal. Dec. 24, 2014).  Traffickers bundle currency using rubber bands "to allow for quick counting during currency and drug exchanges." *Id*. at *9.

Furthermore, willful blindness has been described as a culpable state of mind that is greater than simple negligence.  *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 808 (3rd Cir. 1994).  It occurs where a person "deliberately closes his eyes to what otherwise would have been obvious and whose acts of omission show a conscious purpose to avoid knowing the truth." *United States v. 1989 Jeep Wagoneer*, 976 F.2d

1172, 1175 (8th Cir. 1992).  It accurately describes what happened here.  For purposes of federal forfeiture law, willful blindness infers, and is the equivalent of, actual knowledge.  *United States v. 874 Gartel Drive*, 79 F.3d 918, 924 (9th Cir. 1996); *United States v. Real Property at 3814 Thurman Street*, 164 F.3d ---, 1196-97; *United States v. One Parcel of Real Estate Located at 1948 Martin Luther King Drive*, 91 F. Supp. 2d 1228, 1246 (C.D. Ill. 2000) (family members who are willfully blind to drug dealer's source of income cannot be innocent owners of property he titles in their names).

Here, the defendant currency was found in a hallway closet, bundled with rubber bands in stacks of bills.  SOF at ¶¶ 10, 11.  This manner of organizing currency is consistent with the practices of narcotics dealers.  Currency packaged in bundles secured with rubber bands is "consistent with drug trafficking norms."  *United States v. $20,050.00 in United States Currency*, 2017 U.S. Dist. LEXIS 140086 *7 (C.D. Cal. Aug. 29, 2017).  SOF ¶ 11.  The defendant currency was found in the home with bulk quantities of controlled substances in plain view, and in the company of an indicted drug trafficker whose financial records demonstrate withdrawals of bulk cash (in an amount close to the amount of the defendant currency) from his bank account in the month immediately before the seizure.  SOF ¶¶ 10, 11, 35-41.

Moreover, Claimant's assertion that she had no knowledge that the cohabitant J. MCCORMICK manufactured, produced, stored, or sold narcotics and/or controlled substances at the Palmdale strains credulity and evidence willful blindness to the crimes which permeated her home.  The investigators' photographic evidence shows bulk quantities of controlled substances prepared for manufacture or distribution in plain view, throughout various locations in the home.  SOF ¶ 36.  Claimant's testimony is simply not credible, and neither is her claim to the defendant currency, which represents the drug proceeds of J. MCCORMICK's sales of the controlled substances he had strewn around the home in bulk quantities, and which led to his arrest and prosecution.  SOF ¶¶ 1, 2, 8-13, 29, 35-41.

20

The evidence of drug trafficking was literally everywhere, and Claimant's instant claim to have earned and owned the defendant currency is most likely a fiction meant to obtain possession of drug proceeds actually earned by J. MCCORMICK's drug trafficking.  As discussed below, Claimant is incapable of demonstrating a lawful source of income, or any plausibly sufficient income that would account for $50,000 in U.S. currency, and the defendant currency must be forfeited to the government accordingly.

2. The Aggregate of the Facts Establish the Forfeitability of the Defendant Currency

As explained above, forfeiture determinations are made under an aggregate of facts test by which all of the facts indicative of the alleged illegal activity are considered cumulatively, with no single factor being dispositive, in order to decide whether there is a sufficient nexus between the assets sought for forfeiture and the alleged illegal activity. *United States v. U.S. Currency, $42,500.00*, *supra*, 283 F.3d at 980-82.  Courts have consistently found that currency is subject to forfeiture in cases with facts similar to those here.  *United States v. Cruz*, 669 F. App'x. 883 (9th Cir. 2016).  In *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274- 75 (10th Cir. 2007), the Court found that the quantity of the seized currency, the fact that it was packaged with rubber bands in plastic bags, the claimant's inconsistent statements and lack of documentary support for his explanation, and the odor of marijuana established the forfeitability of the currency.  In *United States v. $84,615.00 in U.S. Currency*, 379 F.3d 496, 501-02 (8th Cir. 2004), the Court found that the quantity of currency, the fact that it was packaged in vacuum sealed bags, a positive canine alert, the presence of a small amount of marijuana, and claimant's false statement regarding his inability to open the trunk of his car was sufficient circumstantial evidence to establish forfeitability.

"The determination whether the government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence." *United States v. $49,790 in U.S. Currency*, 763 F. Supp.2d 1160, 1166 (N.D. Cal. 2010) (citing *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002)); *see also United*

1   *States v. $250,000 in U.S. Currency*, 808 F.2d 895, 899 (1st Cir. 1987) ("the aggregate of
2   the facts, even if no particular circumstance is conclusive, can support the conclusion
3   that money is drug-related").  "Common experience considerations" are applied in
4   determining whether money is derived from drug trafficking.  *See id*.

5          There are several factors relevant in determining whether seized money is related
6   to drug trafficking.  Currency wrapped in a manner not normally used for transporting
7   large amounts of currency also supports an inference that it is drug related.  *Currency,*
8   *U.S. $42,500.00*, 283 F.3d at 982; *United States v. $215,300 United States Currency*, 882
9   F.2d 4g17, 418-19 (9th Cir. 1989) (concealing money in jacket, socks, and apron-like
10  cloth supports an inference that the money was drug-related).

11         Here, the defendant currency was found wrapped in rubber bands, in a locked
12  container in a hallway closet (shared with a cohabitant who is indicted for drug
13  trafficking), in a home where bulk quantities of marijuana and other controlled
14  substances were kept in plain view, throughout the home.  SOF ¶¶  10, 11, 35, 36.  The
15  defendant currency was seized pursuant to arrest and search warrants on the Palmdale
16  residence where J. MCCORMICK lived.  SOF ¶ 1.  J. MCCORMICK is now a
17  defendant in *U.S. v. Jordan Nicholas McCormick, et al*., 2:20-CR-00346-DMG.[6]  SOF
18  ¶ 9.   In conjunction with the search of the Palmdale residence, investigations also
19  recovered firearms and bulk narcotics, including LSD, marijuana, methamphetamine,
20  and a variety of benzodiazepines.  SOF ¶ 9.  Under the aggregate of the facts test,
21  J. MCCORMICK's arrest and the related criminal case form a nexus with the instant
22  civil forfeiture action that indisputably demonstrates that the defendant currency

23  [6] J. MCCORMICK faces the following charges: 21 U.S.C. § 846: Conspiracy to
24  Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C.
    §§ 841(a)(1), (b)(1)(B),(b)(1)(C): Distribution of Fentanyl; 21 U.S.C.
25  §§ 841(a)(1),(b)(1)(B)(vi): Possession with Intent to Distribute Fentanyl; 21U.S.C.
    §§ 841(a)(1), (b)(1)(C): Distribution of Cocaine;21 U.S.C. §§ 841(a)(1), (b)(1)(A)(v):
26  Possession with Intent to Distribute LSD; 18 U.S.C. § 924(c)(1)(A)(i): Possession of a
27  Firearm in Furtherance of a Drug Trafficking Crime;18 U.S.C. § 3:Accessory After the
    Fact; 21 U.S.C. § 853, 18 U.S.C. § 924, 28U.S.C. § 2461(c): Criminal Forfeiture.
28

22

1  represents proceeds of drug trafficking.  SOF ¶ 12.

2      Taken as a whole, and based on the evidence collected, the undisputed evidence

3  establishes as a matter of law that the defendant funds are subject to forfeiture pursuant

4  to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).  As stated above, should

5  Claimant seek to oppose this motion by producing new evidence, it would constitute

6  evidence not provided to the government in response to its earlier discovery requests and

7  must be stricken.

8          3.    Claimant's Income is Inconsistent with the Amount of Cash Seized

9      In civil forfeiture, the lack of legitimate income is the "most persuasive factor" in

10  determining forfeitability under the preponderance standard.  *United States v. Eighty*

11  *Thousand Six Hundred Thirty-Three Dollars*, 2:05-cv-1086-WKW, 2008 U.S. Dist.

12  LEXIS 32745, at *6 (M.D. Ala. Apr. 21, 2008).  In fact, "summary judgment is

13  appropriate where a claimant . . . fails to show that the [property] seized was derived

14  from legitimate sources."  *United States v. $13,963.00, United States v. $ 13,963.00,*

15  *More or Less, in United States Currency*, CIVIL ACTION NO. 3:07-0470, 2009 U.S.

16  Dist. LEXIS 95270, at *4 (S.D.W. Va. Oct. 13, 2009); *see also Funds in the Amount of*

17  *$30,670.00*, 403 F.3d at 468 (tax returns and admissions showed income which was

18  insufficient to explain expenditures).

19      The lack of legitimate income is strong circumstantial evidence of the defendant

20  asset illegal activity link to establish forfeitability under the aggregate of the facts test.

21  *See, e.g., United States v. $30,670 in U.S. Funds*, 403 F.3d 448, 452-53, 468 (7th Cir.

22  2005) (affirming grant of summary judgment where claimant had filed for bankruptcy

23  and claimant's expenditures exceeded his income by over $25,000.00); *United States v.*

24  *174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (affirming grant of

25  summary judgment where defendant funds were seized in 1999, first and second

26  claimants filed no tax returns from 1994 to 1999 and 1994 to 1997, respectively, and the

27  second claimant's 1998 and 1999 tax returns showed $31,142 in total income. The court

28  stated "Claimants' legitimate income was insufficient to explain the large amount of

currency ($174,206.00) found in their possession"); *United States v. Funds from Prudential Sec.*, 362 F. Supp. 2d 75, 82-83 (D.D.C. 2005) (granting summary judgment where defendant investment account funds exceeded claimant's legitimate income); *United States v. Real Prop. In Mecklenburg Cnty.*, 814 F. Supp. 468, 476-77 (W.D.N.C. 1993) (granting summary judgment where claimant's tax returns did not reveal sufficient income for the purchase of the defendant real property).

Claimant has submitted no evidence to counter the government's proof that the defendant currency is related to or represents proceeds of illegal controlled substance transactions. This is a proper basis for a finding by the Court that the defendant currency is subject to forfeiture and granting summary judgment in the government's favor. *See United States v. 228 Acres of Land and Dwelling*, 916 F.2d 808, 813 (2d Cir. 1990) (claimant's failure to offer documentation to prove legitimate source of cash supported inference that forfeited properties were traceable to drug activity).

Here, Claimant is incapable of proving any legitimate sources of income sufficient to represent the defendant currency. She failed to respond fully to the government's special interrogatories regarding her income, and failed to provide any responsive documentation that sufficiently explains how she allegedly saved $50,000, based on one year's income of $10,428. SOF ¶¶ 18, 33, 34. Claimant is further constrained from proving a lawful income because she chose to assert her Fifth Amendment privileges against self-incrimination when asked to admit, or deny, that she earned income which she did not report to the IRS. SOF ¶ 34. Even if one were to assume (absent any evidence), that Claimant's 2020 income is indicative of her 2018 and 2019 earnings, it is inconceivable that she saved $50,000.

Despite Claimant's non-credible assertion that she simply likes saving her money in cash, her bank records actually demonstrate regular use of banks and electronic transactions. SOF ¶¶ 31, 32. Curiously, these same bank records show that Claimant's spending (while post-seizure, generally non-responsive to discovery, and covering a time period beyond but not during the applicable time period requested in the government's

discovery), exceed her stated income.  SOF ¶¶ 31, 32.  This, of course, begs the question as to Claimant's true income source, living in a home with an accused drug trafficker. The only plausible explanation for the source of the defendant currency, supported by the government's documentary evidence, is that it represents a portion of the $58,000 in J. MCCORMICK's bulk cash withdrawals (from Chase bank ending in x8787) in the months immediately before the seizure.  SOF ¶¶ 38-41.  As such, the defendant currency represents drug proceeds, and must be forfeited to the government.

## VI.   CONCLUSION

For the reasons stated above, the United States respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) and Supplemental Rule G(8)(c)(ii)(B) because the undisputed facts establish that the defendant currency represents or is traceable to one or more exchanges for a controlled substance of listed chemical, or was intended to be used in one or more such exchanges, in violation of 21 U.S.C. § 841 *et seq*., and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Dated: December 17, 2021                    Respectfully submitted,

                                            TRACY L. WILKISON
                                            United States Attorney
                                            SCOTT M. GARRINGER
                                            Assistant United States Attorney
                                            Chief, Criminal Division
                                            JONATHAN S. GALATZAN
                                            Assistant United States Attorney
                                            Chief, Asset Forfeiture Section

                                             */s/ James E. Dochterman*
                                            JAMES E. DOCHTERMAN
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA